

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-11-2005

# In Re Thompson

Precedential or Non-Precedential: Precedential

Docket No. 04-3220

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In Re Thompson " (2005). 2005 Decisions. Paper 613.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/613

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-3220

IN RE: GERALD THOMPSON,
Appellant

———————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No.: 03-cv-05937
District Judge: The Honorable Michael M. Baylson

———————————

Argued on June 30, 2005

Before: NYGAARD, SMITH, and FISHER, *Circuit Judges*

(Filed: August 11, 2005)

David A. Scholl, Esquire [Argued]
Regional Bankruptcy Center of Southeastern PA
6 St. Albans Avenue
Newtown Square, PA 19073
        *Counsel for Appellant*

Bruno Bellucci, III, Esquire [Argued]
Law Offices of Bruno Bellucci, III, P.C.
747 Shore Road
P.O. Box 359
Linwood, NJ 08221
      *Counsel for Appellee*

—————————————

OPINION OF THE COURT

—————————————

SMITH, *Circuit Judge*.

   In this matter of first impression for the courts of appeals, we must decide whether a restitution order from a state criminal prosecution for theft by deception, which directs payment to the fraud victim, is exempt from a Chapter 7 bankruptcy discharge under 11 U.S.C. § 523(a)(7).[1] This case distills into a judgment between the literal language of this Bankruptcy Code provision and federalism doctrine as expounded by the Supreme Court in *Kelly v. Robinson*, 479 U.S. 36 (1986). Having determined that the Supreme Court meant what it said in *Kelly* when it held that

—————————————

[1] Section 523(a)(7) excepts from discharge the bankrupt's debts to the extent "such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss... ."

2

"§ 523(a)(7) preserves from discharge *any* condition a state criminal court imposes as part of a criminal sentence," *id.* at 50 (emphasis added), we will affirm the judgment of the District Court. In this case, at least, federalism concerns embodied in a long tradition of courts' unwillingness to discharge monetary obligations that form part of a state criminal judgment when applying federal bankruptcy statutes, and Congress's deference to that tradition, trump a literal reading of the statutory text. We thus hold that § 523(a)(7) preserves from discharge Thompson's state criminal restitution order-related debt.

I.

In October 1999, Robert Hewitt hired Gerald Thompson, a developer with cash flow problems, to build a house. Unbeknownst to Hewitt, Thompson diverted some of Hewitt's materials payments to other projects, to the tune of over $20,000. By the time Hewitt became aware of Thomspon's deceit, the complete house Hewitt had paid for was a doorless skeleton without an exterior finish.

Hewitt lodged a criminal complaint against Thompson in the Superior Court of New Jersey, Cape May County. The criminal case was pursued by a county prosecutor. Thereafter, Thompson filed for bankruptcy protection under Chapter 13, an action he soon converted to Chapter 7. Hewitt was listed as a creditor and received notice of the filing and of the deadlines in the case. Though the debt Thompson owed Hewitt was the

3

result of deception, Hewitt did not object to the discharge of the debt under § 523(a)(2)(A) or (a)(4), which except from discharge debts arising from fraud and larceny, respectively. Hewitt merely sent a letter protesting discharge to the Chapter 7 trustee.[2] Thompson received his Chapter 7 discharge on February 6, 2002. He filed a Chapter 13 bankruptcy petition on February 21, 2002.

On January 31, 2002, Thompson pled guilty to issuing bad checks in the criminal case that originated with Hewitt's complaint. On April 12, 2002, Thompson was sentenced to, inter alia, five years' probation and $22,785 restitution. The restitution was payable at $500 per month through the Cape May Probation Department. The restitution payments were to be forwarded to Hewitt ($20,000) and another of Thompson's

---

[2] Sections 523(a)(2) and (4) are of no use to Hewitt now, because unlike § 523(a)(7) complaints, which can be filed "at any time," creditors with notice must avail themselves of §§ 523(a)(2)'s and (4)'s discharge exceptions within a fixed period in the bankruptcy proceeding itself. *See* 11 U.S.C. § 523(c)(1); FED. R. BANKR. P. 4007(b)-(c). We recognize the government interest in resolving fraud claims in the bankruptcy case, and that at some level Hewitt is culpable for not properly objecting before Thompson's discharge. Still, we will not interfere with the New Jersey criminal judgment. As witnessed by Hewitt's litigating to preserve Thompson's restitution obligation more than three years after the sentence was imposed, we doubt many fraud victims will sleep on their rights as Hewitt did.

victims.

Thompson filed this action for injunctive relief as part of his Chapter 13 bankruptcy to determine whether Thompson's obligations to Hewitt under the restitution order were discharged in the Chapter 7 case.[3]

## II.

Thompson conceded at oral argument that neither § 523(a)(7) nor any other Bankruptcy Code provision empowers a federal court to enjoin the continuance of a state criminal proceeding to collect a debt incurred through fraud.[4] Thompson

---

[3] Upon filing this action, Thompson apparently stopped making payments. On August 30, 2002, the New Jersey Superior Court ordered Thompson to show cause why he should not be incarcerated for failing to make his scheduled restitution payments.

[4] Though some bankruptcy courts have interpreted the discharge injunction of § 524(a)(2) in that way, probing the criminal proceeding for its "principal motivation" and enjoining it where the prosecution is motivated by a desire to compensate the fraud victim, *see, e.g., In re Brinkman*, 123 B.R. 318, 322 (Bankr. D. Minn. 1991); *In re Kaping*, 13 B.R. 621, 623 (Bankr. D. Or. 1981), we note that it is much easier to find cases that pay lip service to the proposition than actually attempt to enjoin state criminal prosecutions. In any event, Thompson wisely did not

also acknowledged that a federal court would be powerless to block a state court from imposing some other punishment, such as incarceration, upon a debtor as a substitute for his restitution obligation. Rather, Thompson argues that the "payable to and for the benefit of a governmental unit" qualifier of § 523(a)(7), and this Court's interpretation of the clause in *In re Rashid*, 210 F.3d 201 (3d Cir. 2000) (per curiam), compels us to prohibit New Jersey from collecting through the criminal restitution order Thompson's debt to Hewitt that was discharged in the Chapter 7 proceeding. We believe *Kelly* forecloses Thompson's preferred result, and that *Rashid* and the case it principally relied upon, *In re Towers*, 162 F.3d 952 (7th Cir. 1998), invite our disposition of this case.

*Kelly* involved a Connecticut welfare cheat, Carolyn Robinson, who pled guilty to larceny. 479 U.S. at 38. As part of her sentence, the Connecticut Superior Court ordered Robinson to pay restitution to the state's probation office in the amount of welfare benefits she wrongfully received, $9,932.95. *Id.* Robinson filed a Chapter 7 bankruptcy petition three months later. *Id*. at 39. When the probation office informed Robinson that it considered the restitution obligation to have survived her § 727 discharge, Robinson filed a declaratory judgment action to determine whether § 523(a)(7) rendered the restitution nondischargeable. *Id*. at 39-40.

---

press the issue.

6

Section 523(a)(7) contains three criteria, each of which a creditor must establish to prevail. The debt must be (1) a "fine, penalty, or forfeiture," subject to the qualifications that (2) it is "payable to and for the benefit of a governmental unit"; (3) and "is not compensation for actual pecuniary loss." *Kelly* began its analysis by observing that under the Bankruptcy Act of 1898, courts, exercising their "traditional[] ... reluctan[ce] to interpret federal bankruptcy statutes to remit state criminal judgments," 479 U.S. at 44, had established an exception to bankruptcy discharge for criminal sentences, including restitution orders. *Id*. at 46. Because Congress had not explicitly abrogated this judicial exception in the 1978 Bankruptcy Code, under the normal rule of statutory construction, the Court determined restitution remained in the class of penalties excepted from discharge. *Id*. at 47. As it would several times in the opinion, the Court iterated that its primary interpretive heuristic for the Bankruptcy Code "must reflect the basis for this judicial exception, a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings." *Id*. Again emphasizing that by its failure to explicitly address the longstanding judicial exception to the discharge of state criminal restitution orders in the 1978 Bankruptcy Code, Congress seemingly accepted it, the Court continued:

> We do not think Congress lightly would limit the rehabilitative and deterrent options available to state criminal judges. ... This Court has

7

recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief. [citing *Younger v. Harris*, 401 U.S. 37, 44-45 (1971)]. This reflection of our federalism must influence our interpretation of the Bankruptcy Code in this case.

*Id*. at 49.

Regarding the second of the two qualifying clauses of § 523(a)(7), though the restitution appeared to be calibrated to the penny of Robinson's wrongful receipts, the Court did not consider the restitution to be "compensation for [the State's] actual pecuniary loss." *Id.* at 52. Because "the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State, and the situation of the defendant," the Court reasoned, restitution orders are primarily intended to effectuate the State's penal and rehabilitative interests, and are only incidentally assessed to compensate the victim. *Id*. at 53. Accordingly, Thompson's restitution order fits § 523(a)(7)'s "fine, penalty, or forfeiture" rubric, and was not compensation for Hewitt's actual pecuniary loss.

The first qualifying clause of § 523(a)(7), that the debt be "payable to and for the benefit of a governmental unit," was not in doubt in *Kelly* – the restitution was payable to the State's

8

probation office, and the payments would be added to Connecticut's treasury. Tellingly, however, the Court, reading the provision to "create[] a broad exception for all penal sanctions," *id.* at 51, went out of its way to engage this qualifying clause and to stress that it posed no serious threat to criminal restitution orders imposed by a state. The Court declared uncategorically that in its view "neither of the qualifying clauses of § 523(a)(7) allows the discharge of a criminal judgment that takes the form of restitution." *Id.* at 52.

The only meaningful factual difference between *Kelly* and this case is the identity of the victim. Whereas in *Kelly*, the state welfare agency was defrauded and the state itself would receive the debtor's restitution payments, here the victim/restitution recipient is an individual. Where, as here, state criminal restitution orders are implicated, however, this distinction does not seem to matter under *Kelly*, and we are to give great weight to the Supreme Court's considered dicta in limning the breadth of situations its decisions govern. *See In re McDonald*, 205 F.3d 606, 612 (3d Cir. 2000) ("[W]e should not idly ignore considered statements the Supreme Court makes in dicta. The Supreme Court uses dicta to help control and influence the many issues it cannot decide because of its limited docket.").

Nowhere in its discussion of the victim's role in restitution orders did the *Kelly* Court suggest that the "payable to and for the benefit of a governmental unit" language is

9

actually limited to government victims. The Court noted that (1) unlike fines, restitution is forwarded to the victim; (2) the "criminal justice system is not operated primarily for the benefit of victims"; (3) the criminal context undermines the conclusion that restitution is for the benefit of victims; (4) victims do not determine whether and in what amount restitution is ordered; and (5) the state's penal goals, not the victim's injury, generally determines whether restitution will be imposed. *Id.* at 52. Given the many opportunities the Court passed to refer to "government victims" in this section, *Kelly* strongly suggests that, indeed, § 523(a)(7) excepts from discharge all state criminal restitution orders, regardless of whether the payments are made to governmental units or individuals.[5]

In *Towers,* the Seventh Circuit held that a civil restitution order won by the State of Illinois, and payable to Towers' fraud victims, was dischargeable in a Chapter 7 bankruptcy proceeding notwithstanding § 523(a)(7). Absent the "principal interpretive tool used in *Kelly* – the proposition that courts are

---

[5] Citing the provision's legislative history, the Court noted that "[i]t seems likely that the limitation of § 523(a)(7) to fines assessed 'for the benefit of a governmental unit' was intended to prevent application of that subsection to wholly private penalties such as punitive damages." *Kelly*, 479 U.S. at 50 n. 13. This observation bolsters the inference that the Court would extend the § 523(a)(7) discharge exception to state criminal restitution payments directed to individual victims.

10

'reluctant to interpret federal bankruptcy statutes to remit state criminal judgments' (479 U.S. at 44)" – Judge Easterbrook reasoned that "§ 523(a)(7) offers weak support for exempting restitution orders from discharge, for it does not mention restitution, and it operates only if the penalty is 'for the benefit of a governmental unit' – a condition not easy to satisfy when the governmental body is collecting for private creditors." *Towers*, 162 F.3d at 954. Without the aid of federalism doctrine with which to interpret the provision, the plain language of the "payable to..." qualifier indicated that restitution obligations that were paid to Towers' victims could not be saved by the state's passthrough role. *Id*. at 955. Nor could the benefit be said to be the government's when it experienced the civil prosecution as a cost, and the public interest in adjudicative efficiency urged that fraud claims be litigated within the bankruptcy case. *Id*. at 956.

Relying heavily on *Towers*, this Court in *Rashid* held that a federal criminal restitution order that arose before the 1994 addition of § 523(a)(13), which exempts from discharge restitution obligations arising under Title 18 of the United States Code, was dischargeable because the "payable to and for the benefit of a governmental unit" requirement was not satisfied.[6]

---

[6] Given the federalism interests central to *Kelly*, and the observation that Congress has left § 523(a)(7) untouched since *Kelly's* broad pronouncement that the provision "preserves from discharge any condition a state criminal court imposes as part of

11

*Rashid*, 210 F.3d at 207-08. Though the record was ambiguous whether the government served a passthrough role in distributing the restitution payments to victims, it was "clear that the benefit – the money – is ultimately payable to the victims."[7] *Id.* at 208. In this light, the panel wrote, it "would pervert the clear, unambiguous language of § 523(a)(7) if we found that Rashid's restitution obligation was 'payable to' a governmental unit," and thus § 523(a)(7) did not save the debt from discharge. *Id*.

Importantly for present purposes, *Rashid* noted that the *Kelly* Court "grounded its opinion on federalism concerns" and cited approvingly *Towers'* observation that "§ 523(a)(7) 'offers weak support for exempting restitution orders from discharge'

a criminal sentence," we think it would be anomalous were federal criminal restitution orders to pass through bankruptcy intact while their state analogs are discharged.

[7] The same situation obtains here. Though Thompson's restitution payments pass through the Cape May Probation Department before reaching Hewitt, as illustrated by the fact that Hewitt himself is contesting the discharge and not the Probation Department or the Cape May Office of the Prosecutor, the restitution is effectively paid by Thompson to Hewitt. *See also Towers*, 162 F.3d at 955 (refusing to take a "beadeyed" reading of the restitution order that placed the Illinois Attorney General in the role of collecting and redistributing the restitution payments to the listed victims).

12

*without the aid of federalism concerns*." *Id.* at 207 (emphasis added) (quoting *Towers*, 162 F.3d at 954). Moreover, we believe that contrary to Thompson's averments during oral argument, *Rashid*, by distinguishing itself and *Towers* from *Kelly* on federalism grounds, invites a contrary result in the situation presented in this case.

> *Towers* concerns a civil rather than criminal order of restitution. Federal criminal restitution orders and civil restitution orders share one important distinction from *Kelly* – neither implicates the federal court's longstanding "reluctan[ce] to interpret federal bankruptcy statutes to remit state criminal judgments."

*Rashid*, 210 F.3d at 208 n.3 (quoting *Kelly*, 479 U.S. at 44).

## III.

Unlike *Towers* and *Rashid*, the federalism considerations repeatedly stressed in *Kelly* are implicated with full force here. Read through the lens of federalism, our decision to discount a literal reading of the qualifying clause of § 523(a)(7) at issue is unremarkable. The correctness of this tack is fortified by judicial tradition and Congressional acquiescence concerning

13

the nondischargeability of state criminal restitution orders.[8] Indeed, in reversing the Second Circuit's decision, which "focused primarily on the language of ... § 523 of the Code," the Supreme Court observed that under its cases the text "is only the starting point" of statutory construction. *Kelly,* 479 U.S. at 43.

---

[8] Congress's willingness to assert its authority under the Bankruptcy Clause to address the dischargeability of criminal restitution orders – superseding Supreme Court decisions when necessary – marks as conspicuous its silence in the wake of *Kelly's* broad wording. As noted above, in 1994, Congress made federal criminal restitution orders nondischargeable when it enacted 11 U.S.C. § 523(a)(13).

Four years earlier, a mere six months after the Court in *Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 564 (May 29, 1990), ruled that state criminal restitution orders were dischargeable under Chapter 13, Congress superceded that decision. *See* The Criminal Victims Protection Act of 1990, Pub. L. No. 101-581, § 3, 104 Stat. 2865, 2865 (enacted Nov. 15, 1990) (codified as 11 U.S.C. § 1328(a)(3)) (excepting from Chapter 13 discharge any debt "for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime"). Given that Congress's choice to allow broader discharges under Chapter 13 than under Chapter 7 formed part of *Davenport's* rationale for refusing to extend the rule of *Kelly* to Chapter 13 discharges, *Davenport*, 495 U.S. at 563, we are confident that Congress agrees with *Kelly* that state criminal restitution orders are not dischargeable under Chapter 7 either, and that this rule obtains regardless of whether the victim-restitution payee is a governmental unit or an individual.

14

"In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Id.* (tracing the aphorism to *United States v. Heirs of Boisdore*, 49 U.S. (8 How.) 113, 122 (1849)). In essence, the Supreme Court acknowledged here that while reading "restitution" into § 523(a)(7), it read the subsection's qualifying clauses out of the provision, at least where the restitution is imposed as part of a criminal sentence in state court.

Here, as in *Kelly*, "we must consider the language of ... § 523 in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems." *Kelly*, 479 U.S. at 43-44. This deference is manifest in Congress's acceptance of the judicially-created exception of state criminal restitution orders from discharge in bankruptcy liquidations. *Id.* at 53 (predicating the result in *Kelly* on "the strong interests of the States, the uniform construction of the old [Bankruptcy] Act over three-quarters of a century, and the absence of any significant evidence that Congress intended to change the law in this area"). Notwithstanding that in practical terms Thompson's restitution payments are "payable to" Hewitt, *Kelly* dictates that we not interfere with New Jersey's criminal restitution order. We will thus affirm the judgment of the District Court.