**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 47 MAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court at No. 619 MDA 2017 dated |
| | : | February 20, 2018 Affirming the |
| v. | : | Judgment of Sentence of the Court of |
| | : | Common Pleas of Lackawanna |
| | : | County, Criminal Divison, at No. CP- |
| JOSEPH PETRICK, | : | 35-CR-0000068-2016 dated March 8, |
| | : | 2017. |
| Appellant | : | |
| | : | ARGUED:  May 16, 2019 |

**OPINION**

JUSTICE MUNDY                                        DECIDED:  September 26, 2019

We granted allocatur in this case to address the effect a discharge of a civil debt by a federal bankruptcy court has on the authority of a state trial court to order mandatory restitution as part of a sentence in a criminal case involving the same obligation.

On April 14, 2015, Appellant, Joseph Petrick, contracted with a homeowner, Donna Sabia, to perform remodeling work.  Under the terms of the contract, in exchange for payment of $3,500.00, Appellant agreed to frame and sheet-rock three rooms and lower the ceiling in one room.  The work was to commence on April 16, 2015, and be completed within seven days.  Sabia paid Appellant a deposit of $1,750.00 plus $300.00 to cover the cost of city permits.  Appellant began some of the contracted work on April 18, 2015, at which time Sabia paid an additional $1,750.00 to Appellant.  That same day, Appellant and Sabia's son, Carmen Fazio, who also resided in the home, entered into a second contract for Appellant to do some painting in the home.  As consideration, Fazio

purchased a $600.00 saw for Appellant. Appellant performed additional work on April 19, 2015. Appellant and Fazio entered into a third contract to install siding on the exterior of the home. Fazio paid Appellant $2,300.00 to purchase materials. Appellant did not return to the still uncompleted job after that date. Appellant at first advised Sabia and Fazio that he needed time to hire help, as he had another job, and would complete the jobs in May. Appellant eventually advised Sabia and Fazio that he could not complete the jobs but would refund $4,950.00 within a week. Appellant never refunded any money or the saw, nor did he ever purchase the siding materials or obtain the permits from the city.

On September 3, 2015, Appellant filed for Chapter 7 bankruptcy. In his petition, Appellant listed Sabia and Fazio as creditors. The bankruptcy court issued a discharge order on March 17, 2016. On October 5, 2015, Detective Jaimie Barrett, of the City of Scranton Police Department, filed a criminal complaint charging Appellant with theft by deception and deceptive business practices.[1] Following a non-jury trial, the court found Appellant guilty of theft by deception and not guilty of deceptive business practices. The court sentenced Appellant to a term of incarceration of three to eighteen months. Appellant was also ordered to pay $6,700.00 in restitution. Appellant filed a motion for reconsideration of his sentence, which the trial court denied on March 21, 2017.

On appeal, the Superior Court affirmed the trial court's judgment of sentence.[2] *See Commonwealth v. Petrick*, 185 A.3d 1133 (Pa. Super. 2018) (unpublished memorandum).

---

[1] 18 Pa.C.S. §§ 3922(a)(1) and 4107(a)(1), respectively. Each count was graded as a third-degree felony.

[2] In addition to the issue discussed *infra*, Appellant challenged the sufficiency of the evidence to prove theft by deception, asserting the evidence did not establish the requisite mens rea, in part, because his ability to repay was legally barred during the pertinent period by the bankruptcy stay. Appellant also challenged the discretionary aspects of his sentence. The Superior Court's rulings on these issues are not the subject of this Court's allocatur grant.

Before the court, Appellant argued that the portion of his sentencing order requiring him to pay restitution is illegal because the debt was discharged in bankruptcy.[3] Appellant argued that the Bankruptcy Code specified that the filing of a petition operated as an automatic stay of any action to recover a debt that preceded the filing.

### § 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--

. . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title

11 U.S.C. § 362(a)(6). Appellant also cited *Johnson v. Lindsey*, 16 B.R. 211 (Bankr. M.D. Fla. 1981), for the proposition that a state may not use criminal proceedings solely to compel payment of a debt subject to the Bankruptcy Code's automatic stay. Appellant's Brief at 19-20. In *Johnson*, the Bankruptcy Court entertained the debtor's request to enjoin the creditor and state prosecutors from pursuing criminal charges on the same facts underlying a listed debt in the bankruptcy proceeding. In that case, the debtor had filed a voluntary petition in bankruptcy on July 9, 1981, and notice was sent to the creditor. On September 16, 1981, the State Assistant Attorney filed an information charging the debtor with obtaining property with a worthless check. The facts supporting the

---

[3] Although Appellant did not raise this issue at or before sentencing, or in a post-sentence motion, the Superior Court recognized that the claim implicated the legality of his sentence and was therefore not subject to waiver. Superior Ct. Op. at 10 (citing *Commonwealth v. Burwell*, 42 A.3d 1077, 1084 (Pa. Super. 2012) (holding question regarding a court's authority to order restitution implicates the legality of a sentence, and is not waivable)).

information were supplied by the creditor. The court held that bankruptcy proceedings do not shield a debtor from criminal prosecution. *Johnson*, 16 B.R. at 212. However, it determined that use of criminal proceedings to secure repayment of a debt otherwise subject to the automatic stay would not be proper. *Id.* Accordingly, it enjoined the State Assistant Attorney from seeking or recommending restitution as part of any sentence that may ensue. The Court also enjoined the creditor from utilizing the criminal prosecution to recover its claim. *Id.*

The Superior Court noted it had addressed this same issue in *Commonwealth v. Shotwell*, 717 A.2d 1039 (Pa. Super. 1998). In that case, Shotwell defrauded a victim out of more than $71,000.00 as part of an investment scheme and then filed for bankruptcy, listing the victim as an "unsecured debt in dispute." *Id.* at 1046. Shotwell was subsequently charged and convicted of theft by deception and related offenses. The trial court imposed an obligation to pay restitution as part of Shotwell's sentence. On appeal, Shotwell contended that the trial court lacked authority to order restitution of a debt discharged in bankruptcy. *Id.* The *Shotwell* Court referenced *Kelly v. Robinson*, 479 U.S. 36 (1986), wherein the United States Supreme Court reasoned that restitution orders as part of the criminal justice system are not motivated to benefit the victim/debtor, but by the criminal justice goals a State has in deterrence, enforcement, and rehabilitation. *Shotwell*, 717 A.2d at 1046. Because the benefit of a restitution order inures primarily to the State, the Court in *Kelly* held that the obligation was not dischargeable in bankruptcy. *Id.* The *Shotwell* Court further held that a restitution order entered after the discharge by the bankruptcy court of a civil debt is distinct and does not resurrect the debt or debtor/creditor relationship in circumvention of the bankruptcy relief. *Id.*

Instantly, the Superior Court deemed *Shotwell* controlling. It therefore determined the restitution order in this case was legally entered.

Appellant suggests that the issue before this Court involves balancing the protection of a State's citizens through the State's police power as expressed through its criminal justice system and the protection of debtors provided by the federal Bankruptcy Code. Appellant remarks that it has long been established that the Bankruptcy Act serves both a public and private interest by providing relief for the "honest but unfortunate debtor" who submits to the distribution of his or her property by affording a fresh start unburdened by past debt. Appellant's Brief at 13-14 (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)). Appellant acknowledges that the authority to discharge debt is not unconstrained under the Act. Appellant notes Section 523 of the Bankruptcy Act enumerates obligations that are excepted from discharge, which includes any obligation "for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not for compensation of actual pecuniary loss." *Id.* at 14 (quoting 11 U.S.C. § 523(a)(7)).[4] Appellant argues that because Pennsylvania's mandatory restitution statutes, by their terms, have a core purpose to compensate victims for their losses and fail to serve any rehabilitative purpose, Section 523(a)(7) does not apply to preclude discharge of such restitution orders in Chapter 7 bankruptcy proceedings.[5] In support of

---

[4] At issue here is a discharge under Section 727 pertaining to liquidation of the debtor's estate pursuant to a petition filed under Chapter 7 of the Bankruptcy Act. Discharges in connection with a reorganization plan pursuant to a petition filed under Chapter 13 of the Bankruptcy Act are subject to additional exceptions listed in Section 1328, including an express exception from discharge of a debt "for restitution, or a criminal fine included in a sentence on the debtor's conviction of a crime." 11 U.S.C. § 1328(a)(3).

[5] The provisions at issue include the following.

### § 9721. Sentencing generally

. . .

**(c) Mandatory restitution.--**In addition to the alternatives set forth in subsection (a) of this section the court shall order the

defendant to compensate the victim of his criminal conduct for the damage or injury that he sustained. . . .

42 Pa.C.S. § 9721(c).

### § 1106. Restitution for injuries to person or property

**(a) General rule.--**Upon conviction for any crime wherein:

(1) property of a victim has been stolen, converted or otherwise unlawfully obtained, or its value substantially decreased as a direct result of the crime; or

(2) the victim, if an individual, suffered personal injury directly resulting from the crime,

the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.

**(b) Condition of probation or parole.--**Whenever restitution has been ordered pursuant to subsection (a) and the offender has been placed on probation or parole, the offender's compliance with such order may be made a condition of such probation or parole.

**(c) Mandatory restitution.--**

(1) The court shall order full restitution:

(i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. . . .

. . .

(2) At the time of sentencing the court shall specify the amount and method of restitution. In determining the amount and method of restitution, the court:

. . .

(iii) Shall not order incarceration of a defendant for failure to pay restitution if the failure results from the offender's inability to pay.

this conclusion, Appellant notes that the Section 1106(c)(1)(i) of the Crimes Code was amended by the Legislature in 1995 to require restitution "regardless of the current financial resources of the defendant." *Id.* at 14-15 (citing 18 Pa.C.S. § 1106(c)(1)(i) and 42 Pa.C.S. § 9721(a)). Appellant notes that prior to that amendment, the Superior Court expressed the view that "[i]f the amount of restitution imposed exceeds the defendant's ability to pay, the rehabilitative purpose of the order is disserved, especially where the restitution payment is a condition of probation, for in such a case the defendant is told that he will not be imprisoned only if he somehow satisfies a condition he cannot hope to satisfy." *Id.* at (quoting *Commonwealth v. Fuqua*, 407 A.2d 24, 26 (Pa. Super. 1976)). Appellant argues that this Court's recent pronouncement in *Commonwealth v. Veon*, 150 A.3d 435 (Pa. 2016), that the primary purpose of restitution in Pennsylvania is rehabilitative, merely relied on pre-amendment authority and failed to consider the mandatory aspect of the current restitution requirements, which may result in the imposition of an obligation beyond a defendant's means to fulfill. Appellant's Brief at 16. Accordingly, Appellant argues the Pennsylvania restitution statutes no longer serve a rehabilitative purpose, but rather serve primarily a compensatory goal. As such, Appellant

---

**(f) Noncompliance with restitution order.--**Whenever the offender shall fail to make restitution as provided in the order of a judge, the probation section or other agent designated by the county commissioners of the county with the approval of the president judge to collect restitution shall notify the court within 20 days of such failure. . . . Upon such notice of failure to make restitution . . . the court shall order a hearing to determine if the offender is in contempt of court or has violated his probation or parole.

18 Pa.C.S.A. § 1106(a)-(c), (f).

argues that the imposition of mandatory restitution in this case is in violation of the Bankruptcy Code.

Appellant concedes that federal courts are generally reticent to interfere with state criminal matters, but argues it is nevertheless "well established . . . that the Bankruptcy Court will not permit the State to use criminal prosecution for the sole purpose of collecting a debt dischargeable in bankruptcy, or to use law enforcement as a collection agency." *Id.* at 19 (quoting *Johnson*, 16 B.R. at 212). Appellant maintains that the facts in this case establish that he filed for bankruptcy prior to the filing of the criminal complaint and that the homeowner had a full opportunity to avail herself of the protections afforded creditors under the Bankruptcy Code. He argues that criminal proceedings ought not to be used as an alternative to those protections in securing debt payment.

Appellant argues the Superior Court's reliance on *Shotwell*, which in turn relied on *Kelly*, is misplaced. Appellant maintains the circumstances in *Kelly* are distinguishable from the facts in this case. Appellant notes the bankruptcy filing by the defendant in *Kelly* post-dated the imposition of the subject restitution order, which contrasts with the circumstances in the instant case where Appellant filed for bankruptcy before any criminal charges were filed. Additionally, Appellant notes the Connecticut restitution statute at issue in *Kelly* authorized an order of restitution "in an amount [the defendant] can afford to pay." *Id.* at 18 n.1 (quoting Conn. Gen. Stat. § 53a-30 (1985)). Thus, Appellant argues the statute was deemed to be rehabilitative rather than serving solely a compensatory purpose.

Appellant urges this Court to adopt a balancing test, as proposed by the Amici in their supporting brief, for courts to evaluate whether a restitution order unduly burdens the interests embodied in the Bankruptcy Code. The factors proposed are the following:

> (1) whether the statute, rule, or judgment imposing the restitution obligation is compensatory or rehabilitative in

nature, (2) whether the proceeding resulting in the imposition of the restitution obligation was initiated at the request of private creditors of the debtor, (3) whether the prosecutor's office conducted an independent investigation into the criminal charges, (4) whether the proceeding resulting in the imposition of the restitution obligation was commenced after the debtor received a discharge in bankruptcy, and (5) whether the beneficiaries of the restitution obligation had notice of the debtor's bankruptcy proceeding and an opportunity to assert their claims in the bankruptcy court and object to the discharge of their claims.

*Id.* at 23; *see also* Amici Brief at 21-27.[6]

The Commonwealth argues that Appellant's reliance on *Johnson* is inapt because, as a Bankruptcy Court decision from the Middle District of Florida, it has no precedential value in this jurisdiction.[7] The Commonwealth also argues that Appellant's interpretation of the import of the holding in *Johnson* was contradicted by the later decision of the United States Supreme Court in *Kelly*, as followed by the Superior Court in *Shotwell.* Further,

---

[6] The National Consumer Bankruptcy Rights Center, The American Civil Liberties Union of Pennsylvania, Inc., Pennsylvania Legal Aid Network, Inc., Community Legal Services, Inc., Neighborhood Legal Services Association, the Community Justice Project, and the National Consumer Law Center, filed an Amici brief in support of Appellant. Therein, Amici urge this Court to consider the competing goals and interests between the federal Bankruptcy Code and the Commonwealth's Crimes Code. As does Appellant, Amici argue that Pennsylvania's restitution provisions no longer serve a primarily rehabilitative purpose due to their mandatory nature without regard to a defendant's ability to pay. In order to prevent end-runs around bankruptcy protections through use of the criminal courts, Amici propose the above mentioned five-part test to assure proper criminal justice interests are served by the issuance of a restitution award where the civil obligation has already been discharged in bankruptcy. *See* Amici Brief, *passim*.

[7] The Commonwealth also asks this Court to take judicial notice of additional proceedings before the bankruptcy court that are not contained in the certified record below and were not considered by the lower courts. In those proceedings, Appellant sought relief from the bankruptcy court against enforcement of the restitution order in light of the prior discharge of the civil debt. The court dismissed the complaints, noting, *inter alia*, that the discharge did not include any restitution per section 523(a)(7). These determinations by the bankruptcy court do not moot the issue accepted for review by this Court, which involve a legality of sentence issue and statutory interpretation of the sentencing provisions at issue in this case. Accordingly, we need not accept the Commonwealth's invitation to take judicial notice of the bankruptcy court's extra-record proceedings.

the Commonwealth argues that the Superior Court correctly relied on *Shotwell*. The key holding in *Shotwell* was that a restitution order is distinct from any related civil debt. This distinction does not depend on whether a discharge in bankruptcy is sought before or after the imposition of the restitution order.

The Commonwealth also argues that other cases support the Superior Court's reliance on *Shotwell* and *Kelly*. Particularly, the Third Circuit Court of Appeals in *In re Thompson*, 418 F.3d 362 (3d Cir. 2005), noted that the federalism concerns expressed in *Kelly* preclude interference with a state's restitution order. Thus, the Commonwealth points out, the *Thompson* court distinguished cases that concerned federal restitution orders. Commonwealth's Brief at 19.

The Commonwealth additionally argues that this Court, in a case construing Pennsylvania's mandatory restitution statute, has already reaffirmed the primary rehabilitative purpose of the restitution requirement.

> It is well established that the primary purpose of restitution is rehabilitation of the offender by impressing upon him or her that his criminal conduct caused the victim's loss or personal injury and that it is his responsibility to repair the loss or injury as far as possible. *Commonwealth v. Runion*, 662 A.2d 617, 618 (Pa. 1995). Thus, recompense to the victim is only a secondary benefit, as restitution is not an award of damages. Although restitution is penal in nature, it is highly favored in the law and encouraged so that the criminal will understand the egregiousness of his or her conduct, be deterred from repeating the conduct, and be encouraged to live in a responsible way. Thus, restitution, at its core, involves concepts of rehabilitation and deterrence.

*Commonwealth v. Brown*, 981 A.2d 893, 895–96 (Pa. 2009) (some citations omitted). The Commonwealth argues that this Court in *Brown* and *Veon* did not rely blindly on *Runion*, but did so recognizing that the amendment to the restitution statutes, which made restitution mandatory, did not alter the purpose behind restitution awards. Indeed, the

Commonwealth notes that, in *Veon*, this Court specifically remarked that the Legislature's amendment to Section 1106 served to reinforce that purpose. Commonwealth's Brief at 21 (citing *Veon*, 150 A.2d at 451).

Lastly, the Commonwealth argues that neither the timing of the restitution order relative to Appellant's bankruptcy proceedings, nor the fact that the victim did not participate in the bankruptcy proceedings, are relevant to the central question of the purposes served by a restitution order. Nothing in the record of this case suggests the Commonwealth was improperly motivated in investigating and pursuing criminal charges or in ascertaining the harm to be remedied through its recommendation of restitution.

We granted allocatur in this case to specifically address a sentencing court's "authority to direct payment of restitution which obligation has been previously discharged in [the defendant's] bankruptcy[.]" *Commonwealth v. Petrick*, 192 A.3d 1109 (Per Curiam Order). The question of whether a sentencing court has the authority to order restitution where the equivalent civil debt has been discharged by a bankruptcy court implicates the legality of sentencing, which presents a pure question of law. In such case our scope of review is plenary and our standard of review de novo. *Commonwealth. v. McClintic*, 909 A.2d 1241, 1245 (Pa. 2006). Additionally, the resolution of this matter involves statutory interpretation of the relevant sentencing statutes, which also present pure questions of law for which our scope of review is plenary and standard of review de novo. *Bowling v. Office of Open Records*, 75 A.3d 453, 466 (Pa. 2013).

As reflected in their respective arguments, the parties recognize that the Court in *Kelly* held that the language of Section 523(a)(7) of the Bankruptcy Code exempts from discharge a restitution order entered as a consequence of a state prosecution. *Kelly*, 479 U.S. at 52. The decision in *Kelly*, however, included a recognition that the Connecticut restitution statute in question "focus[es] on the State's interests in rehabilitation and

punishment, rather than the victim's desire for compensation." *Id.* at 53. Thus, at its core, Appellant's argument is that Section 523(a)(7) of the Bankruptcy Code, as interpreted by the United States Supreme Court in *Kelly*, does not preclude discharge of the restitution order in this case because, by amending the restitution statutes to mandate the imposition of a restitution order as part of any sentence imposed, the Legislature altered the fundamental purpose underlying restitution from rehabilitation of the defendant to compensation of the victim. As acknowledged by Appellant, this Court has specifically stated otherwise in *Brown* and *Veon*. Arguably, the observations made in those cases were dicta as they did not directly affect the outcome of the issues disposed of.[8]

The notion that a mandatory imposition of restitution as part of a sentence is antithetical to a rehabilitative purpose can be traced to the language of the Superior Court in *Fuqua* that suggests "if the amount of restitution imposed exceeds the defendant's ability to pay, the rehabilitative purpose of the order is disserved, especially where the restitution payment is a condition of probation, for in such a case the defendant is told that he will not be imprisoned only if he somehow satisfies a condition he cannot hope to satisfy." *Fuqua*, 407 A.2d at 26. The concern expressed here is not the mandatory requirement of an order for restitution, but the disconnection between the requirement and any assessment of a defendant's ability to fulfill the obligation. We do not discount the limited utility of requiring something impossible of compliance, but the statute accounts for this by providing consideration of a defendant's ability to pay, albeit at a different stage of the proceedings.

---

[8] Both *Brown* and *Veon* involved issues of statutory construction concerning whether Medicare, or the Department of Community and Economic Development, respectively, were entities in a capacity that entitled them to receive restitution under the provisions of Section 1106.

> (2) At the time of sentencing the court shall specify the amount and method of restitution. In determining the amount and method of restitution, the court:
>
> . . .
>
> (iii) Shall not order incarceration of a defendant for failure to pay restitution if the failure results from the offender's inability to pay.

18 Pa.C.S. § 1106 (c)(2)(iii). The Legislature did not foreclose a sentencing court's consideration of a defendant's ability to pay restitution; it merely eliminated ability to pay as a prerequisite consideration. By mandating that a court include an order of restitution for losses occasioned by defendants' criminal conduct, in appropriate cases, as part of its sentencing, the Legislature did not alter the rehabilitative and restorative benefits previously recognized as embodied by such orders. Rather, as we noted in *Veon*, it sought to reinforce them. Neither did the Legislature seek to punish a defendant for his or her inability to comply. The Legislature simply placed the consideration of a defendant's ability to pay at the more pertinent stage, when a sentencing court must assess a defendant's compliance with the order.[9]

Accordingly, we reaffirm our statement in *Veon*:

---

[9] Legislative enactments imposing mandatory sentencing considerations and mandatory sentencing provisions that diminish or channel a sentencing court's discretion reflect a long understood attempt to find a balance between sentencing consistency and individualized consideration.

> [I]ndividualized sentencing is not the only relevant tradition. A just legal system seeks not only to treat different cases differently but also to treat like cases alike. Fairness requires sentencing uniformity as well as efforts to recognize relevant sentencing differences.

*Pepper v. U.S.*, 562 U.S. 476, 510 (2011) *per* Breyer, J., concurring. By mandating a sentencing consideration (such as consultation of guidelines), a minimum term of incarceration, or, as in this case, an imposition of a restitution order, the Legislature does not alter the rehabilitative, deterrent, restorative or other purpose underlying the sanctions at issue.

> Echoing *Runion*, we emphasized [in *Brown*] that the primary purpose of restitution is rehabilitation of the offender. Consequently, recompense to the victim is only a secondary benefit, as restitution is not an award of damages, a proposition reinforced by the General Assembly's 199[5] amendment of Section 1106 making restitution mandatory rather than discretionary.

*Veon*, 150 A.3d at 451 (internal quotation marks and citations omitted).

Having determined that the basis for restitution orders in Pennsylvania remains focused on the rehabilitative needs of defendants, we conclude the holding of the United States Supreme Court in *Kelly* applies. The Court in *Kelly* determined that the qualifying language in Section 523(a)(7), "payable to and for the benefit of a governmental unit and is not for actual pecuniary loss," includes a prohibition from discharge of both fines and restitution orders in a state criminal case. *Kelly*, 479 U.S. at 52. A contrary holding "would hamper the flexibility of state criminal judges in choosing the combination of imprisonment, fines, and restitution most likely to further the rehabilitative and deterrent goals of state criminal justice systems." *Id.* at 49. As expressed in *Thompson*:

> [F]ederalism concerns embodied in a long tradition of courts' unwillingness to discharge monetary obligations that form part of a state criminal judgment when applying federal bankruptcy statutes, and Congress's deference to that tradition, trump a literal reading of the statutory text. We thus hold that § 523(a)(7) preserves from discharge Thompson's state criminal restitution order-related debt.

*Thompson*, 418 F.3d at 363.

We also agree with the Superior Court that the *Kelly* Court's holding that Section 523(a)(7)'s exclusion from bankruptcy discharge includes restitution, is not dependent on the relative timing of the discharge of the civil obligation in relation to the imposition of the criminal sanction. The discharge of a civil debt prior to the commencement of a criminal proceeding has no bearing on the purpose served by a restitution order. Similarly, the

level of participation of the victim/creditor in any bankruptcy proceeding is irrelevant to the distinct status of and purpose of a restitution order. To accept Appellant's suggestion would only encourage a race to the respective courthouses to jockey for a perceived advantage. Other checks and balances exist to prevent inappropriate use of criminal prosecution. For these reasons we decline to impose the balancing test proposed by the Amici and endorsed by Appellant.

We conclude that the Legislature did not alter the rehabilitative, enforcement, deterrent and other purposes for restitution orders in criminal sentencing by making such orders mandatory. The Legislature allowed for consideration of a defendant's ability to pay by a court when considering a defendant's compliance with the order. Because the mandatory restitution order serves criminal justice goals, restitution orders remain distinct from civil debt liability with respect to discharge in bankruptcy. This distinction is unaffected by the temporal relationship between the proceedings in the bankruptcy court and the criminal prosecution. Additionally, it is unaffected by a creditor's participation in the bankruptcy proceedings. In the instant case there is no indication the restitution award was improperly sought by the prosecutor or awarded by the sentencing court. Accordingly, we affirm the order of the Superior Court.

Chief Justice Saylor and Justices Baer, Todd, Donohue, Dougherty and Wecht join the opinion.